# EXHIBIT 1

BEFORE THE STATE OF CALIFORNIA

DEPARTMENT OF HEALTH CARE SERVICES

OFFICE OF ADMINISTRATIVE HEARINGS AND APPEALS

| | |
|---|---|
| In the Matter of the Proposed Transfer/Discharge:<br><br>Chin-Li Mou<br>4141 Boneso Circle<br>San Jose, CA 95134 | TRANSFER/DISCHARGE APPEAL<br>APPEAL NO. 15-2291<br><br>DECISION AND ORDER |

## SUMMARY

On March 28, 2015, Chin-Li Mou (hereinafter referred to as Resident) discharged from Courtyard Care Center, a skilled nursing facility [SNF], (hereinafter referred to as Facility) to 4141 Boneso Circle in San Jose (hereinafter referred to as Home) because she allegedly did not want to continue to stay in Facility at the private pay rate following the last covered day (LCD) as stated in the Notice of Action (NOA) from Resident's Medi-Cal managed care health plan (hereinafter referred to as MMHCP). As such, Resident allegedly decided to go Home the day after her LCD, as demonstrated by the post-discharge plan of care that she signed and dated on the day she discharged. Moreover, Facility argued that it was not required to provide Resident a written notice in advance of her discharge because her decision to go Home was voluntary. Facility asserted that it did not initiate the discharge action rather Resident exercised her right to either remain at Facility or go Home; she chose the latter option after being informed she would have to pay at the private pay rate following her LCD.

///

1

1   On April 30, 2015, Resident asserted that Facility had erroneously determined
2   that she must be discharged and filed an appeal with this office.

3   **PRESENTATION AT HEARING**

4   The hearing convened at 11:00 a.m., on Thursday, May 28, 2015, at Facility.
5   Names of persons in attendance are a matter of record.

6   All testimony was under oath and the proceedings were digitally-recorded.

7   I

8   The oral and documentary evidence, introduced into the administrative record
9   during the course of the hearing, established the following:

10  Resident is 52 year old, female, who was initially admitted from Stanford Hospital
11  to Facility on January 16, 2015, for skilled rehabilitation of multiple fractures after being
12  struck by a motor vehicle as a pedestrian. Resident's diagnoses included: closed lower
13  femur fracture; aftercare involving internal fixation device; closed fracture of upper end
14  of fibula with tibia; closed fracture lumbar vertebra without mention spinal cord injury;
15  closed fracture of sternum; thoracic aorta injury; liver injury without mention of open
16  wound into cavity laceration; other pulmonary embolism and infarction; acute venous
17  embolism and thrombosis of deep vessels of distal lower extremity; intracranial injury of
18  other and unspecified nature without mention of open intracranial wound, unspecified
19  state of consciousness; and unspecified essential hypertension.

20  According to Facility, at the time of Resident's discharge, she was independent in
21  all activities of daily living (ADLs).[1] Resident was also continent and ambulatory with a
22  front-wheeled walker for safety. At the time of discharge, Resident required assistance
23  with community ADLs and complicated home management, such as, shopping and
24  deep cleaning of her Home. Resident is alert and oriented and represented herself in
25  these proceedings.

---

27  [1] ADLs reflect resident's capacity for self-care.

II

In summary, Facility testified to its knowledge of Resident's right to appeal the MMHCP coverage denial. However, Facility argued that while it was aware of Resident's right to request a State hearing, it had not received proof of said request nor of her request for aid pending the State Hearing prior to her discharge. Facility presented documentation faxed from MMHCP dated May 20, 2015, of Resident's requests for State hearing and aid pending on March 25, 2015 and April 2, 2015, respectively. In response to the above information from MMHCP, Facility offered to admit the Resident; however, at the time of the offer it did not have an available female bed nor was one available at the time of these proceedings.

Facility recounted that it informed Resident that she would have to pay the private rate ($297/day) to remain at Facility following her LCD. Facility further argued that in response to her knowledge of the costs to remain there, Resident initiated her discharge Home, as evidenced by the post-discharge plan of care that she signed and dated on March 28, 2015. As such, Facility asserted it was not required to provide Resident with written notice in advance of her voluntary discharge.

On March 24, 2015, in preparation for Resident's safe and orderly discharge, Facility obtained an order from Resident's attending physician (MD), for her discharge Home after her LCD with Home Health Agency (HHA) services, durable medical equipment, and medications, as documented in Resident's clinical record; said record also included social services and interdisciplinary care conference notes, discharge summary, and post-discharge plan of care. Upon discharge, PT also documented that Resident had made progress but also plateaued in functional mobility. Occupational Therapy (OT) noted that Resident had achieved her highest practicable level in Facility. PT/OT services were discharged on March 27, 2015, per MD order.

///
///

3

III

Resident disputed Facility's testimony of her wish to return Home, as she did not feel like she was ready to go Home; however, felt threatened and compelled to leave. She also disputed Facility's testimony that it informed her of the private rate. Regardless, Resident argued that she verbally informed Facility's Business Office Manager and other staff in Facility that she had filed a timely appeal. As such, Resident argued that Facility knew she had done so and yet it did not permit her to remain there pending the State hearing. Resident also argued that she was to receive aid pending the State hearing. As such, Resident asserted that Facility inappropriately determined that she needed to discharge Home without adequate advance written notice as required by law.

Resident added that her discharge Home was premature and unsafe, given her physical limitations at the time of her discharge. As such, a State Hearing determination is still pending as to whether the MMHCP incorrectly denied her coverage for continued stay/rehabilitation in Facility under the Milliman Recovery Facility Care and/or Medi-Cal guidelines.

Resident also acknowledged Facility's offer to readmit her and that there was an unavailable bed; however, despite her complaints about the quality of care at Facility, she is familiar with Facility and prefers to continue receiving rehabilitation services there as opposed to any other proposed SNF. Resident has chosen to wait for an available bed at Facility rather than request admission through the MMHCP to another SNF at this time.

IV

In closing, Facility replied that it did not pressure Resident to leave and reiterated that following its discussion with Resident about paying at the private rate, Resident made a decision to go Home rather than pay.

///

## ANALYSIS AND CONCLUSIONS

I have reviewed the testimony and other information presented at the hearing.

I

Title 42, Code of Federal Regulations, (42, C.F.R.), § 483.12(a)(2) specifies the discharge requirements that pertain to SNFs. These requirements pertain to all discharges **initiated by a facility** whether the resident agrees with the discharge.[2] In this case, the evidence established that Resident went Home the day after her LCD, as demonstrated by her signature and departure on May 28, 2015. More importantly, while Resident was aware she would be required to pay Facility at the private pay rate following the LCD, the evidence also established that she discharged against her wishes and without adequate notification, as required by law.

If Facility had provided Resident with written notice in advance of her LCD, it would have, at least, given her the information to file an appeal through this office and the opportunity to be permitted to remain in Facility pending these proceedings. While the Federal requirements allow for exceptions to advance notice,[3] given the reason for discharge in this case, Facility was required to provide notice as soon as practicable and/or at the time it had knowledge of the LCD under MMHCP. As such, it may have at least met the notification requirement.

Furthermore, while the evidence that Resident agreed to the post-discharge plan and went Home after the LCD is compelling, I find that Resident's discharge was erroneous to the extent that Facility was aware of the Federal discharge requirements and obligation to permit her to remain at Facility pending a State Hearing. Moreover, in accordance with the signed Admission Agreement and Federal discharge requirements, a resident must be permitted to remain in the SNF and not be discharged unless one of

---

[2] Interpretive Guidelines, State Operations Manual, Centers for Medicare and Medicaid.
[3] 42, Code of Federal Regulations (CFR), §431.213(h). Exceptions from advance notice that states, "The date of action will occur in less than 10 days, in accordance with §483.12(a)(5)(ii), which provides exceptions to the 30 days notice requirements of §483.12(a)(5)(i)."

six enumerated conditions exists. In this case, the reason for the MMHCP's denial, that Resident no longer met the medical criteria in Milliman Recovery Facility Care Guidelines, is most similar to the reason that allows for the involuntary discharge of a resident, as stated under 42, C.F.R. § 483.12(a)(2)(ii), in which, a resident's health has improved sufficiently to the extent that they no longer need the services of the facility. In this case, the determination of whether Resident no longer meets the criteria for continued rehabilitation services at Facility under MMHCP and/or the Medi-Cal guidelines[4] currently rests with the State Fair Hearings Division of the California Department of Social Services. Under Resident's MMHCP, SNF services may be available to its members if they are physically disabled and require a high level of care which must be prescribed by a Plan Physician or certified nurse practitioner and provided in a licensed SNF.[5]

      In summary, the MMHCP action does not preclude Facility from complying with the Federal discharge requirements which includes but is not limited to the provision of reasonable advance written notice of a proposed discharge, whether Resident agrees or not.

      Therefore, I find that whether Resident agreed with the post-discharge plan is irrelevant in this case, as Facility failed to support that it was not required to issue a written notice in advance of her discharge.

## SUMMARY OF CONCLUSIONS

      While the evidence established that regardless of the MMHCP coverage denial, Resident wished to remain at Facility and Facility failed to provide her with written notice prior to her discharge. Furthermore, Facility should have permitted her to remain there pending the State hearing. As such, Facility failed to support that it substantially met

---

[4] Medi-Cal Criteria for Long-Term Care Services, Title 22, California Code of Regulations (C.C.R.),§ 51335.
[5] Santa Clara Family Health Plan - Medi-Cal Evidence of Coverage 2014-2015; http://www.scfhp.com/sites/default/files/mceoc_en_0_1.pdf.

6

the notification requirements for a safe and orderly discharge, as provided by 42, C.F.R. § 483.12(a)(4).

**DECISION AND ORDER**

The appeal is GRANTED. Courtyard Care Center SHOULD NOT have discharged Resident, Chin-Li Mou, without due process notification. In accordance with Resident's health plan and bed availability, Facility MUST readmit Resident upon a favorable determination of the State hearing and/or by prescription from a plan physician or certified nurse practitioner whichever occurs first.

This is the FINAL DECISION AND ORDER of the Department and no further administrative remedies are available. [6]

_____     6/3/15
MARTHA OYOG                   Date
Hearing Officer

---

[6] This Decision/Order may have a statutory effect upon resident's right to contest the non-coverage action through his/her health insurance plan, State Fair Hearings Division of the California Department of Social Services, or the California Department of Managed Health Care. The resident may also contact the Managed Care Ombudsman's Office of the California Department of Health Services for assistance.