UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAREN MOU,<br><br>    Plaintiff,<br><br>v.<br><br>SSC SAN JOSE OPERATING COMPANY LP, et al.,<br><br>    Defendants. | Case No. 5:18-cv-01911-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES**<br><br>Re: Dkt. Nos. 61, 86 |

## I. INTRODUCTION

Plaintiff Karen Mou[1] initiated this putative class action suit after she was discharged from Defendant Courtyard Care Center ("Courtyard"), a skilled nursing facility ("SNF") in San Jose, California. Plaintiff alleges that Defendants failed to comply with numerous statutorily mandated discharge procedures in violation of California Health and Safety Code § 1430(b) and California Business & Professions Code § 17200. Plaintiff characterizes Defendants' conduct as "dumping"—an allegedly "common business practice" used by SNFs "to summarily get rid of their poorest and neediest residents to make room for more lucrative clients." First Am. Compl. ("FAC") (Dkt. No. 16) ¶ 5.

Defendants removed the action on the basis of federal question jurisdiction under 28 U.S.C. § 1331 because the Health and Safety Code claim is premised in part on violations of

---

[1] Co-plaintiff Anita Willis voluntarily dismissed her claims. Dkt. No. 63.
Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

1

federal law (*i.e.*, 42 U.S.C. §§ 1395i-3(c)(2)(B)(i)(I)-(III), 42 U.S.C. § 1395i-3(c)(2)(B)(ii), 42 C.F.R. § 483.15(c)(2)-(5), and 42 C.F.R. § 431.210), as well as on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). At the direction of the Court, Defendants later filed an amended notice of removal based solely on diversity jurisdiction. Dkt. No. 34. Defendants now move to dismiss each of the claims or in the alternative for a more definite statement.[2] Dkt. No. 61. To the extent any of Plaintiff's claims are not dismissed, Defendants move to strike certain allegations. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## II. BACKGROUND[3]

Courtyard is part of a for-profit nursing home chain run by Defendant SavaSeniorCare, LLC ("Sava") and a large network of commonly owned and controlled affiliates, subsidiaries and "shell" entities. FAC ¶¶ 9, 30. Sava manages six SNFs in California (collectively "Facility Defendants"): (1) Courtyard; (2) Defendant SS Pittsburg Operating Company LP, dba Diamond Ridge Healthcare Center ("Diamond Ridge"); (3) Defendant SSC Oakland Excell Operating Company LP, dba Excell Health Care Center ("Excell"); (4) Defendant SSC Newport Beach Operating Company LP, dba Flagship Healthcare Center ("Flagship"); (5) Defendant SSC Carmichael Operating Company LP, dba Mission Carmichael Healthcare Center ("Mission Carmichael"); and (6) Defendant SSC Tarzana Operating Company LP, dba Tarzana Health and Rehabilitation Center ("Tarzana Health"). *Id*. ¶¶ 20-25. Each of the Facilities Defendants has the same governing board officers and members, and all of the Facilities Defendants are owned by California Holdco, LLC ("Holdco"). *Id*. ¶¶ 26, 27. Holdco is a holding company that maintains a 98.99% ownership interest in each of the Facility Defendants. *Id*. ¶ 27.

Sava owns Defendant SavaSeniorCare Administrative Services, LLC, which owns,

---

[2] The request for judicial notice accompanying Defendants' motion to dismiss (Dkt. No. 61-1) is granted as unopposed.
[3] The Background is a summary of the allegations in the FAC.

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

2

operates, controls and/or provides services to the SNFs in the Sava chain in California and other states. *Id*. ¶ 31. Defendant SavaSeniorCare Consulting, LLC also owns, operates, controls and/or provides services to the SNFs in the Sava chain in California and other states. *Id*. ¶ 32. Defendant SSC Disbursement Company, LLC either directly or indirectly owns, operates, controls and/or provides services or capital to the SNFs in the Sava chain in California and other states. *Id*. ¶ 34.

Plaintiff was admitted as a resident of Courtyard on January 16, 2015 for rehabilitation after she was hit by a car as a pedestrian. *Id*. ¶ 46. She suffered from a lower femur fracture, fracture of the upper end of the fibula and tibia, fracture of her lumbar vertebra, fracture of her sternum, thoracic aorta injury, liver injury, other pulmonary embolism and infarction, acute venous embolism and thrombosis of deep vessels of distal lower extremity, intercranial injury and hypertension. *Id*. On March 28, 2015, Courtyard told Plaintiff she had to leave, even though Plaintiff was barely able to walk with the help of a four-wheeled walker. *Id*. ¶ 47. Courtyard did not provide Plaintiff with a 30-days' written notice. *Id*. ¶ 48. Nor did Courtyard notify her of her rights (a) to appeal, (b) to remain in the facility while her appeal was pending, and (c) to consult with an ombudsman. *Id*. After her eviction, Plaintiff requested a hearing before the California Department of Health Care Services ("DHCS"). *Id*. ¶ 49. On June 3, 2015, the State ruled in Plaintiff's favor and found that Defendants had illegally discharged her by failing to provide advance written notice. *Id*.[4] On February 20, 2018, Plaintiff filed the instant action.

Plaintiff asserts two causes of action: (1) an action under California Health and Safety Code § 1430(b) predicated upon alleged violations of California's Patient Bill of Rights and other rights provided by other federal or state laws or regulations; and (2) violation of California Business and Professions Code §17200 ("UCL") predicated upon "unlawful, fraudulent and/or unfair" conduct. *Id*. ¶¶ 64-79. Plaintiff seeks an injunction prohibiting Defendants' allegedly

---

[4] Plaintiff's request for judicial notice of the Decision and Order from the Department of Health Care Services, Office of Administrative Hearings and Appeals, Appeal No. 15-2291 is granted as unopposed.

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

3

1  unlawful business practices, including wrongfully discharging residents, and $500 per statutory violation for each resident allegedly unlawfully discharged within the last four years. *Id.* ¶¶ 11, A, B.

### III. STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. Fed. R. Civ. P. 12(b)(6); *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011), *cert. denied*, *sub nom Blasquez v. Salazar*, 132 S. Ct. 1762 (Mar. 19, 2012). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). When deciding whether to grant a motion to dismiss, the court must construe the alleged facts in the light most favorable to the plaintiff. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotations omitted). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

Consumer-protection claims that sound in fraud, as Plaintiffs' UCL claim does in part, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011) (Rule 9(b) applies to claims under the UCL). Rule 9(b) requires a party to state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v.*

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

4

*Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading . . . [when that pleading] is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The decision to grant a motion under Rule 12(e) is within the discretion of the trial court. *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011). Typically, such motions are disfavored in light of the liberal pleading standard, and "should not be granted unless the defendant cannot frame a responsive pleading." *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981) (citing *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979)).

Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). When the court considers a motion to strike, it "must view the pleadings in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). A motion to strike will generally not be granted unless it is clear the matter to be stricken could not have any possible bearing on the subject matter of the litigation. *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005).

**IV. DISCUSSION**

Defendants contend that Plaintiff's section 1430(b) claim under the Long-Term Care, Health, Safety, and Security Act of 1973 (the "Act") is time-barred, having been filed more than one year after Plaintiff's discharge. Defendants further contend that Plaintiff's UCL claim is inadequately pled because Plaintiff only alleges in a conclusory fashion that Defendants' conduct was unlawful, fraudulent, and/or unfair. Defendants also contend that the FAC offers no plausible theory for why Defendants other than Courtyard could be liable for Courtyard's treatment of Plaintiff. More specifically, Defendants contend that Plaintiff fails to allege the essential elements

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

5

of alter ego liability, and in any event, alter ego liability is not available for actions under section 1430(b). If the Court does not dismiss Plaintiff's claims, Defendants move to strike portions of the FAC, namely (1) alleged violations of California Code of Regulations, title 22, section 72572 subdivisions (a)(4), (a)(5), (a)(7), (a)(10), and (a)(12), California Welfare and Institution Code § 14124.7, and 42 C.F.R. sections 483.10(b); (2) Plaintiff's requests for injunctive relief and punitive damages; and (3) the class allegations.

### A. First Cause of Action For Violation of Section 1430(b)

Plaintiff was discharged on March 28, 2015 and filed suit more than a year later on February 20, 2018. Whether Plaintiff's section 1430(b) claim is time-barred depends on the nature of the remedies that section 1430(b) provides. If section 1430(b) provides for a civil penalty, as Defendants contend, then the one-year statute of limitations set forth in California Civil Procedure Code section 340(a) applies, and Plaintiff's claim is time-barred. If instead section 1430(b) provides for damages, as Plaintiff contends, then the catch-all three-year statute of limitations set forth in California Code of Civil Procedure 338(a) applies, and Plaintiff's claim is timely.

The parties do not cite any case that addresses which statute of limitations applies to a section 1430(b) claim, nor is the Court aware of any. Informed by the California Supreme Court's discussion in *Kizer v. County of San Mateo*, 53 Cal. 3d 139, 146-47 (1991), this Court agrees with Plaintiff that section 1430(b) provides for civil damages rather than for a penalty, the three-year statute of limitations applies, and Plaintiff's claim is timely. In *Kizer*, the California Supreme Court gave an overview of the Act. The Act authorizes the State Department of Health Services (the "Department") to inspect long-term health care facilities for compliance with statutes and regulations on patient care and to issue citations to noncomplying facilities. *Id*. at 142. When the Department observes a violation of a statute or regulation, the Department issues a citation to the facility. *Id*. Citations under the Act are classified according to the seriousness of the violation and a penalty range is prescribed for each class. *Id*. The most serious violations are class "AA" violations, which are defined as class "A" violations that the Department determines to have been

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

6

a direct proximate cause of death of a patient or resident. Cal. Health & Safety Code § 1424(c). A class "AA" violation is subject to a "civil penalty in the amount of not less than five thousand dollars ($5,000) and not exceeding twenty-five thousand dollars ($25,000) for each citation. *Id*. Class "A" violations are violations which the Department determines present imminent danger of death or serious harm, or a substantial probability of death or serious harm, to the patients or residents of the long-term health care facility. *Id*. §1424(d). A class "A" violation is subject to a lesser "civil penalty" of "not less than one thousand dollars ($1,000) and not exceeding ten thousand dollars ($10,000)." *Id*. Class "B" violations are violations that the Department determines have a "direct or immediate relationship to the health, safety, or security of long-term health care facility patients or residents, other than class 'AA' or 'A' violations." *Id.* § 1424(e). A class "B" violation is subject to a still lesser "civil penalty" of "not less than one hundred dollars ($100) and not exceeding one thousand dollars ($1,000)." *Id*. Penalties paid by a licensee are applied against the Department's accounts. *Kizer*, 53 Cal. 3d at 142. The Act sets forth detailed procedures for a licensee to "appeal" a citation and penalty. The procedures vary depending upon the class of the citation. *See* Cal. Health & Safety Code § 1428 (requiring, for example, licensee to file civil action in superior court to appeal class "AA" or "A" citation).

It is significant for purposes of the instant lawsuit that the Act also authorizes an enforcement mechanism when the Department has not taken action and violations have not been corrected. *Kizer*, 53 Cal. 3d at 143. The California Supreme Court noted that section 1430, entitled "Injunction; action for civil damages; civil action for violation of patient's rights; waiver of rights", authorizes either the Attorney General or a private party to prosecute a "civil action for damages." *Id.* "The 'focus' of the private right of action is 'to *encourage regulatory compliance* and prevent injury.'" *Lemaire v. Covenant Care Cal., LLC*, 234 Cal. App. 4th 860, 866 (2015) (quoting *Nevarrez v. San Marino Skilled Nursing & Wellness Ctr., LLP*, 221 Cal. App. 4th 102, 135 (2013)). Section 1430 reads as follows:

> (a) Except where the state department has taken action and the

> violations have been corrected to its satisfaction, a licensee who commits a class "A" or "B" violation may be enjoined from permitting the violation to continue or may be sued for civil damages within a court of competent jurisdiction. An action for injunction or civil damages, or both, may be prosecuted by the Attorney General in the name of the people of the State of California upon his or her own complaint or upon the complaint of a board, officer, person, corporation, or association, or by a person acting for the interests of itself, its members, or the general public. The amount of civil damages that may be recovered in an action brought pursuant to this section may not exceed the maximum amount of civil penalties that could be assessed on account of the violation or violations.
>
> (b) A current or former resident or patient of a skilled nursing facility, as defined in subdivision (c) of Section 1250, or intermediate care facility, as defined in subdivision (d) of Section 1250, may bring a civil action against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights in Section 72527 of Title 22 of the California Code of Regulations, or any other right provided for by federal or state law or regulation. The suit shall be brought in a court of competent jurisdiction. The licensee shall be liable for the acts of the licensee's employees. The licensee shall be liable for up to five hundred dollars ($500), and for costs and attorney fees, and may be enjoined from permitting the violation to continue. An agreement by a resident or patient of a skilled nursing facility or intermediate care facility to waive his or her rights to sue pursuant to this subdivision shall be void as contrary to public policy.
>
> (c) The remedies specified in this section shall be in addition to any other remedy provided by law.

Cal. Health & Safety Code §1430. The California Supreme Court also noted that section 1430 "does not foreclose civil actions for damages by patients who have been injured by a violation." *Kizer*, 53 Cal. 3d at 143. Thus, the California Supreme Court construed section 1430 as permitting private parties to bring civil actions for "damages."

Despite the California Supreme Court stating twice that section 1430 allows for "damages," Defendants point to other language in *Kizer* to support their contention that subdivision (b) of section 1430 provides for a penalty: "Civil penalties under the Act, unlike damages, require no showing of actual harm per se. Unlike damages, the civil penalties are imposed according to a range set by statute irrespective of actual damage suffered." 53 Cal. 3d at

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

8

147 (footnote omitted). Parsed from the facts and analysis of the *Kizer* case, the statements quoted above suggest that the Act only provides for civil penalties. Placed in context, it is evident that the statements quoted above do not apply to section 1430(b). In *Kizer*, the State Department of Health Services issued class AA and A citations under section 1424 to a long-term health care facility that was licensed and operated by the County of San Mateo ("County"). The County argued that the section 1424 civil penalties were punitive or exemplary damages and were, therefore, barred by Government Code section 818, which essentially provides that a public entity is not liable for "damages." The California Supreme Court rejected the County's argument, and in doing so, drew a distinction between the Act's civil penalties scheme set forth in section 1424, which the Court considered non-compensatory in nature, and damages, which are compensatory in nature. *Id*. at 146. The California Supreme Court's statements were not intended to address whether under section 1430(b) a private party may recover a civil penalty or damages.

Defendants next contend that section 1430(b) unequivocally imposes only a penalty because that section provides for liability "up to five hundred dollars ($500)"—an amount which Defendants contend is assessed without consideration of any actual loss, *i.e.* compensable damages. In doing so, Defendants rely upon the standard definition of a "penalty": "that 'which an individual is allowed to recover against a wrong-doer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained.'" *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007) (citations omitted). Defendants' argument ignores that the title of section 1430 specifically refers to "civil damages" and the California Supreme Court in *Kizer* twice stated that section 1430 provides for damages. *Kizer*, 53 Cal. 3d at 143 *see also Jarman v. HCR ManorCare, Inc.*, 9 Cal. App. 5th 807, 811 (2017), *review granted*, 396 P.3d 596 (Cal. 2017) (characterizing jury award under section 1430(b) as "statutory damages").

Lastly, Defendants argue that only section 1430(a) explicitly refers to "civil damages," whereas 1430(b) does not. Defendants reason that the difference in language indicates that California's Legislature knew how to provide for "damages" in subdivision (a), chose not to do so

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES
9

in subdivision (b), and the absence of the term in subdivision (b) supports the inference that subdivision (b) provides for a civil penalty. The argument is unpersuasive. Following similar logic, the argument could also be made that the Legislature knew how to provide for a "civil penalty" throughout the Act, chose not to do so in section 1430(b), and the absence of the phrase in subdivision (b) supports the inference that subdivision (b) does not provide for a civil penalty. In any event, there is no need to speculate as to the Legislature's intent because it is set forth in *Nevarrez v. San Marino Skilled Nursing & Wellness Ctr., LLC*, 221 Cal. App. 4th 102 (2013)—a case neither Plaintiff nor Defendants cited. In *Nevarrez*, the court noted that the Assembly Committee on the Judiciary Senate Bill No. 1930 (SB1981–1982 Reg. Sess.), which added subdivision (b) to section 1430, stated that in an "action for damages," the licensee "would be liable for damages up to $500 and for costs and attorney fees." *Id*. at 133 (quoting Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1930 (1981–1982 Reg. Sess. as am. Aug. 2, 1982, p. 1)).[5]

Because the Court finds that section 1430(b) provides for damages, the statute of limitations set forth in California Code of Civil Procedure 338(a) applies. Plaintiff's section 1430(b) claim is timely, having been filed within three years of Plaintiff's discharge. Defendants' motion to dismiss the section 1430(b) claim is denied.

**B.    Unfair Competition**

California Business & Professions Code § 17200 defines unfair competition as any "unlawful, unfair or fraudulent business act or practice." "Unlawful" practices are "forbidden by law." *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838 (1994). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A.*

---

[5] The issue of whether an award under section 1430(b) should be characterized as damages or a civil penalty was not before the *Nevarrez* court. *Id*. at 129, n.10.

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

*Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). The "fraudulent" prong requires a showing of actual or potential deception to some members of the public, or harm to the public interest. *See id*. at 180. A plaintiff may base a UCL claim on an alleged omission, "[but] to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact that the defendant was obliged to disclose." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1085 (N.D. Cal. 2017) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)). The Complaint alleges that Defendants violated section 17200, *et seq.* as follows:

> 77. Plaintiff incorporates the previous paragraphs as though fully set forth herein.
>
> 78. Defendants' conduct alleged herein is unlawful, fraudulent and/or unfair.
>
> 79. Plaintiff[] [has] lost money or property as a result of Defendants' unlawful, fraudulent and/or unfair conduct.

FAC ¶¶ 77-79. Although incorporation by reference is permissible, these allegations fail to satisfy Plaintiff's obligation to provide Defendants with fair notice of the conduct that forms the basis of her UCL claim. The FAC contains numerous allegations without differentiating the allegedly unlawful conduct from the allegedly fraudulent conduct or from the allegedly unfair conduct.

Plaintiff explains in her opposition papers that Defendants engaged in unlawful business practices by violating California Code of Regulations § 72527(a)(4), (6), (7), (10), (12); California Welfare & Institutions Code § 14124.7; California Health & Safety Code § 1418.81; 42 C.F.R. § 483.15(c)(3); 42 C.F.R. § 483.10(a)(3),(b)(1); and 42 U.S.C. § 1395i-3(c)(2)(B)-(C). Pl.'s Opp'n to Mot. To Dismiss at 10. Plaintiff also asserts that Courtyard's concealment of her right to appeal the discharge while she remained living at the facility constitutes both a fraudulent and unfair business practice. *Id*. at 11. "In determining the propriety of a Rule 12(b)(6) dismissal, [however,] a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (quoting *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

11

1 Cir. 1998) (original emphasis)).

2 Moreover, in some instances, just identifying a statute or regulation without alleging facts to explain how Defendants violated the statute or regulation is insufficient. For example, Plaintiff alleges that Defendants violated California Code of Regulations section 72527(a)(4), but fails to allege facts describing how Defendants violated Plaintiff's right "[t]o consent to or to refuse any treatment or procedure or participation in experimental research." Similarly, Plaintiff alleges that Defendants violated section 72527(a)(5), but fail to allege facts describing how Defendants violated Plaintiff's right "[t]o receive all information that is material to an individual patient's decision concerning whether to accept or refuse any proposed treatment or procedure." Common sense dictates that Plaintiff's discharge from Courtyard is not a medical treatment or procedure. Plaintiff also fails to allege any factual basis for the alleged violations of sections 72527(a)(7), (a)(10) and (a)(12), California Welfare and Institution Code § 14124.7 and 42 C.F.R. sections 483.10(b).

The UCL claim is dismissed with leave to amend.

### C. Alter Ego Doctrine

Plaintiff does not allege that any Defendant other than Courtyard had any input, let alone control over, the clinical analyses that led to Courtyard's decision to discharge Plaintiff. Plaintiff nevertheless seeks to hold all Defendants liable for Courtyard's conduct on an alter-ego theory of liability. Defendants contend that Plaintiff has failed to allege sufficient facts to invoke the alter ego doctrine.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000) (citations omitted). Under California law, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Id.* (citing *Roman Catholic Archbishop v. Super. Ct.*, 15 Cal.

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

12

App. 3d 405, 411 (1971)). "Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Sonora Diamond*, 83 Cal. App. 4th 523 at 538 (citing *Robbins v. Blecher*, 52 Cal. App. 4th 886, 892 (1997) and *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 993-94 (1995), *review denied* Sept. 13, 1995).

"To invoke the alter ego doctrine, [a plaintiff] must allege: (1) that there is such a unity of interest and ownership that the separate personalities of the two corporations no longer exist; and (2) that if the acts are treated as those of only one of the corporations, an inequitable result will follow." *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011) (citing *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) and *Sonora Diamond*, 83 Cal. App. 4th at 538. "Among the factors to be considered in applying the doctrine are comingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop*, 15 Cal. App. 3d at 411 (citation omitted). "Conclusory allegations of alter ego status are insufficient." *Walsh*, 798 F. Supp. 2d at 1082 (citing *Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983)). "The alter ego doctrine may apply between a parent and a subsidiary or, 'under the single enterprise rule, . . . between sister or affiliated companies.'" *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011) (quoting *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1341 (2009)).

Here, Plaintiff alleges that each of the Facility Defendants has the same Governing Board Officers and Members; all of the Sava Facilities are owned by California Holdco, LLC, a holding company that maintains a 98.99% ownership interest in each of the Facility Defendants; and the Facility Defendants make various payments to Defendant Sava which are "just payments to

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

13

themselves because the companies are owned and controlled by the same people, who operate the various companies as a single business for the unified purpose of lining their pockets with money that should go to resident care and evading tax." FAC ¶ 28. Plaintiff alleges that Sava provides shared, centralized services, processes and resources for each of the Facility Defendants. *Id.* ¶ 30. Plaintiff alleges that Sava owns SavaSeniorCare Administrative Services, LLC, which owns, operates, controls and/or provides services to the SNFs in the Sava chain in California and other states. *Id.* ¶ 31. Defendant SavaSeniorCare Consulting, LLC also owns, operates, controls and/or provides services to the SNFs in the Sava chain in California and other states. *Id.* ¶ 32. Defendant SSC Disbursement Company, LLC either directly or indirectly owns, operates, controls and/or provides services or capital to the SNFs in the Sava chain in California and other states. *Id.* ¶ 34. Plaintiff alleges that each of the Defendants "was the agent, servant, employee or principal of all the other Defendants, and in doing the things herein alleged was acting within the course and scope of such agency or employment and with the consent and permission of the remaining Defendants; and were operating together for a single, unified purpose." *Id.* ¶ 36. In addition to the above, Sava allegedly aided and abetted the Facility Defendants' alleged violations of the law. *Id.* ¶ 37.

Although the allegations above might be sufficient to satisfy the unity of interest and ownership requirement, there are insufficient allegations to support a reasonable inference that there has been "an abuse of the corporate privilege" that "justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *MacRae v. HCR Manor Care Servs.*, 2014 WL 12588464, at *7 (C.D. Cal. Oct. 30, 2014). Allegations that Defendants operated as a single business for the purpose of "lining their pockets with money" and "evad[ing] liability and "hid[ing] money" (FAC ¶¶ 28-29) are too vague and conclusory to support a plausible inference that there has been an abuse of corporate privileges. Plaintiff makes a generalized allegation that all Defendants violated the law. However, only Courtyard is alleged to have made the decision to discharge Plaintiff.

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

14

Plaintiff next argues that an "inequitable result" will follow if the injunctive relief she seeks is only applied to Courtyard because the remaining Defendants would be left free to discharge other residents without providing the requisite written notice. Pl.'s Opp'n at 14. That all of the Facilities Defendants follow the same discharge policies does not constitute an abuse of corporate privileges. Not one of the cases cited by Plaintiff supports piercing the corporate veil merely because related corporate entities follow the same business policies. In *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1251 (1991), the court found substantial evidence to justify piercing the corporate veil: one entity had guaranteed millions in loans and loan commitments to the other; that same entity issued guarantees to the buyers of a shopping center; two individuals sat as directors on the boards of both corporations; one corporation used the employees of the other; and both corporations "actively participated" in the fraudulent sale of a shopping center to the buyers. Here, there are no comparable allegations that all Defendants actively participated in Plaintiff's discharge.

In *Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1110 (2013), the court held that a defendant and its alleged alter-ego were in fact part of a single business enterprise, and that it would be inequitable to uphold their separate corporate status because the two business entities had structured their financial operations in such a way that left the defendant with no funds to pay its liabilities. Here, there are no comparable allegations that Courtyard will be unable to pay its potential liabilities.

In *Troyk*, the court held that an interinsurance exchange (FIE), its attorney-in-fact (FGI), and its billing agents (Prematic) acted as a single enterprise such that they were all liable for a UCL claim. 171 Cal. App. 4th at 1341-42. FGI created an unlawful scheme to impose a service charge on monthly insurance policies. FIE, which FGI controlled, carried out the scheme by selling the insurance and requiring the insured to enter into a separate agreement with Prematic. Prematic then billed the insured for the premium and the unlawful service charge. Here, there are no comparable allegations that all Defendants took an active role in a coordinated, overarching

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

15

1  scheme to discharge Plaintiff.

2  The claims against all Defendants other than Courtyard are dismissed with leave to amend.

### D. Defendants' Motion to Strike Certain Statutory References

To the extent any of Plaintiff's claims are not dismissed, Defendants move to strike as immaterial the allegations concerning Plaintiffs' rights under California Code of Regulations, title 22, section 72572, subdivisions (a)(4), (a)(5), (a)(7), (a)(10), and (a)(12); and 42 C.F.R. sections 483.10(b) (exercise of rights without reprisal).[6] Defendants contend that Plaintiff has not alleged facts supporting any violation of these particular regulations.

For reasons already discussed, sections 72527(a)(4) and (5) are inapplicable because Plaintiff's discharge is not a "treatment" or "procedure." Sections 72527(a)(4) and (5) shall be stricken as immaterial.

Section 72527(a)(10) sets forth the right to be free from mental and physical abuse and (a)(12) sets forth the right "[t]o be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs." Although Plaintiff's allegations are meager, it is plausible for Courtyard to have violated these provisions while evaluating Plaintiff for discharge and during the discharge itself. Defendants have not clearly shown that sections 72527(a)(10) and (12) have no possible bearing on the subject matter of the litigation, and accordingly, Defendants' motion to strike these two sections will be denied.

Section 72527(a)(7) sets forth a patient's right "[t]o be encouraged and assisted throughout the period of stay to exercise rights as a patient." Similarly, 42 C.F.R. § 483.10(b)(1) requires the facility to ensure that a resident can exercise his or her rights "without interference, coercion, discrimination, or reprisal from the facility." 42 C.F.R. § 483.10(b)(1). Courtyard allegedly violated these provisions because, among other things, it did not encourage Plaintiff to exercise

---

[6] Defendants also move to strike the references to California Welfare and Institution Code § 14124.7 (regarding evictions on change of coverage). Plaintiff's Opposition does not address this section. Defendants' Motion to Strike this section is granted as unopposed.

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

16

her right to appeal, did not encourage Plaintiff to consult an ombudsman, and did not follow any of the other statutory procedures to inform and guide Plaintiff to exercise her rights. FAC ¶ 72. Defendants ask the Court to strike these provisions because Plaintiff does not allege that Defendants interfered with Plaintiff's grievance rights or retaliated against Plaintiff for exercising her rights. Section 72527(a)(7), however, requires Courtyard to take affirmative actions, such as provide assistance, and not just refrain from interfering or retaliating. The failure to follow statutory procedures may constitute interference for purposes of section 483.10(b)(1). Defendants' request to strike these provisions is denied.

### E. Defendants' Motion to Strike Request for Injunctive Relief

Plaintiff seeks an injunction "prohibiting Defendants from wrongfully discharging residents and appointment of a monitor to ensure Defendants stop violating the law." FAC ¶ A. Defendants contend that Plaintiff's request for injunctive relief should be stricken as moot because Plaintiff has been discharged from Courtyard and there is no indication Plaintiff seeks to be readmitted.

Article III of the federal constitution "restricts federal courts to the resolution of cases and controversies." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (citation omitted). "It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *U.S. v. Juvenile Male*, 564 U.S. 932, 936 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quotations omitted)). "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004) (citations and quotations omitted). For example, an inmate's transfer to a different facility moots his claims for injunctive relief against the inmate's former facility. *Jackson v. Hughes*, 2010 WL 1737130, at *1 (C.D. Cal. Mar. 29, 2010), *R. & R. adopted*, 2010 WL 1737129 (C.D. Cal. Apr. 26, 2010). Here, although section 1430(b) allows a former resident to seek injunctive relief, Plaintiff's claim for injunctive relief is moot. As Defendants

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

17

point out, Plaintiff has already been discharged and is not seeking readmission into Courtyard.

Plaintiff nevertheless contends her claim is not moot, citing to cases brought by relatives of residents who died while residing at a SNF. *See Shuts v. Covenant Holdco LLC*, 208 Cal. App. 4th 609, 623-24 (2012); *Lemaire v. Covenant Care Cal., LLC*, 234 Cal. App. 4th 860, 866 (2015). Plaintiff argues that these cases illustrate that a section 1430(b) claim may be maintained even when there is no possibility that the former residents will suffer another violation. In each case, however, the defendant did not raise mootness as an issue, and in any event, the plaintiff in each case was pursuing monetary damages. *Shuts*, 208 Cal. App. 4th at 623; *Lemaire*, 234 Cal. App. 4th at 860.

Plaintiff next argues that there is an exception to the doctrine of mootness for class actions. The exception is inapplicable here because a class has not yet been certified. *See Homles v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135-36 (3d. Cir. 2000) (" If . . . the putative class representative's individual claim becomes moot before he moves for class certification, then any subsequent motion must be denied and the entire action dismissed.").

The request for injunctive relief is ordered stricken.[7]

### F. Defendants' Motion to Strike Class Allegations

Defendants request that the Court strike the class allegations because individual issues predominate. Defendants reason that determining whether residents were wrongfully discharged from a SNF requires making a number of complex medical necessity and documentation determinations on a case-by-case basis. Defendants emphasize that for each discharge, a determination will have to be made regarding (1) whether the resident's discharge was initiated by the resident or by the facility, and (2) which set of discharge requirements were in effect at the time of discharge.

---

[7] Because the request for injunctive relief is moot, it is unnecessary to address Defendants' alternative argument that the Court should apply the doctrine of abstention and decline to adjudicate Plaintiff's request for injunctive relief.

"Class allegations generally are not tested at the pleadings stage and instead are tested after one party has filed a motion for class certification." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012); *see also Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008). That is because a class certification decision usually involves considerations enmeshed in the factual and legal issues presented by the representative's claims. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Thus, a motion to strike class allegations should only be seriously considered when "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Id*. "Before a motion to strike [class allegations] is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citing *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005)).

Here, Plaintiff alleges that Defendants have engaged in a uniform practice of discharging residents without giving proper notice. Pl.'s Opp'n at 23. Such a narrowly circumscribed claim is potentially cognizable on a class basis. Defendants' motion to strike the class allegations is denied.

### G. Defendants' Motion to Strike Punitive Damages

Defendants move to strike the prayer for punitive damages for two reasons. First, Defendants contend punitive damages are not available under either section 1430(b) or the UCL. Whether punitive damages are available under section 1430(b) is under review by the California Supreme Court. *See Jarman*, 9 Cal. App. 5th at 812, *review granted*, 396 P.3d 596 (Cal. 2017). Therefore, it is premature to strike punitive damages on this basis.

Alternatively, Defendants argue that Plaintiff has failed to allege facts to support the requested relief. The Court finds that Plaintiff's allegations are sufficient to satisfy Federal Rule of Civil Procedure 8 as to Courtyard. *See Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D.

Cal. 2015) (applying Rule 8 to malice, fraud, or oppression allegations).

Defendant's motion to strike punitive damages is denied as to Courtyard and granted as to all other Defendants.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss and to strike is GRANTED IN PART AND DENIED IN PART. Plaintiff may file an amended complaint no later than December 9, 2019.

Because the pleadings have not yet been settled, Plaintiff's motion to extend case management deadlines is GRANTED IN PART. All deadlines are extended by four months instead of the requested six months.

| EVENT | FORMER DEADLINE | NEW DEADLINE |
|---|---|---|
| Fact Discovery Cutoff | January 24, 2020 | May 26, 2020 |
| Designation of Opening Experts with Reports | February 21, 2020 | June 22, 2020 |
| Designation of Rebuttal Experts with Reports | February 28, 2020 | June 29, 2020 |
| Expert Discovery Cutoff | March 20, 2020 | July 20, 2020 |
| Deadline(s) for Filing Discovery Motions | See Civil L.R. 37-3 | See Civil L.R. 37-3 |
| Deadline for Filing Dispositive Motions | April 17, 2020 | August 13, 2020 |
| Hearing on Anticipated Dispositive Motion(s) | May 21, 2020 | September 24, 2020 |
| Trial Setting Conference | 11:00 a.m. on January 23, 2020 | 11:00 a.m. on May 28, 2020 |
| Joint Trial Setting Conference Statement | January 14, 2020 | May 18, 2020 |

**IT IS SO ORDERED.**

Dated: November 22, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-01911-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART MOTION TO EXTEND CASE MANAGEMENT DEADLINES

20